UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE PEREZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHN MUIR HEALTH, et al.,<br><br>    Defendants. | Case No. 15-cv-01792-HSG<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 70 |

Pending before the Court is Defendant John Muir Health's motion for summary judgment. Dkt. No. 70 ("Motion"). For the reasons articulated below, the Motion is DENIED.

**I.   BACKGROUND**

Defendant John Muir Health ("JMH") employed Plaintiffs Marlene Perez and Rosa Cerisano as nurses on its hospital staff. Dkt. No. 87-5 ("Perez Decl.") ¶ 2; Dkt. No. 87 ("Cerisano Decl.") ¶ 2. After Plaintiffs provided information in a sexual harassment action brought by Plaintiffs' former co-worker, Ms. Charlotte Reed, against a JMH supervisor, Mr. Charles Griffin (the "Reed Action"), Plaintiffs resigned from JMH. Perez Decl. ¶ 12; Cerisano Decl. ¶ 13.

On April 21, 2015, Plaintiffs filed the current action against Defendants JMH and John Muir Medical Center, alleging that Defendants unlawfully retaliated against and constructively terminated Plaintiffs for their participation in the Reed Action. Dkt. No. 1 ("Compl."). Plaintiffs allege four claims against Defendants: (1) retaliation in violation of Title VII; (2) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"); (3) constructive discharge in violation of Title VII, FEHA, and common law; and (4) failure to provide a workplace free of discrimination and retaliation. Dkt. No. 60 ("FAC"). Cerisano also brings claims for (5) disability discrimination in violation of the Americans with Disabilities Act ("ADA") and (6) disability

1  discrimination in violation of FEHA.  *Id.*

**II.   DISCUSSION**

In its Motion, JMH contends that the undisputed evidence establishes that JMH did not subject Plaintiffs to intolerable working conditions or adverse employment actions as a matter of law.  Mot. at 1.  JMH further asserts that Plaintiffs cannot proffer evidence that JMH took any alleged adverse employment actions because of Plaintiffs' participation in protected activity or Cerisano's disability.  *Id.*  Accordingly, JMH moves for summary judgment as to all of Plaintiffs' claims or, in the alternative, requests partial summary judgment.  *Id.*

**A.   Evidentiary Objections**

Both parties object to evidence submitted with the briefing on JMH's Motion.  JMH objects to four categories of evidence:  (1) portions of Julie O'Brien's declaration; (2) excerpts from Camino Bell's deposition; (3) certain evidence related to the Reed Action; and (4) Michael Robbins's declaration.  Dkt. No. 89 ("Reply") at 3-4.  On June 15, 2016, Plaintiffs filed objections to "new evidence" submitted for the first time with JMH's Reply.  Dkt. No. 90.

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."  *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001); *see also Chartis Specialty Ins. Co. v. Aqua Scis. Engineers, Inc.*, No. 11-CV-03669-JST, 2013 WL 4647288, at *3 (N.D. Cal. Aug. 29, 2013) ("The Court's focus at summary judgment is not on the form of the evidence submitted, but on whether its content would be admissible.").  Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.

For example, "hearsay evidence attached to an affidavit may be considered at summary judgment if the out-of-court declarant could present the evidence through direct, admissible testimony at trial."  *Chartis Specialty Ins. Co.*, 2013 WL 4647288, at *3 (N.D. Cal. Aug. 29, 2013)

(citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). However, because "[a]uthentication is a condition precedent to admissibility," "unauthenticated documents cannot be considered in a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Documents can be authenticated by any manner permitted by the Federal Rules of Evidence, not just personal knowledge. *Id.* at 774.

### i. O'Brien Declaration

JMH objects to paragraphs 8-13, 16-17, and 22-24 of the O'Brien declaration and exhibits 1, 5, and 6 attached thereto for lack of foundation, lack of personal knowledge, speculation, hearsay, irrelevance, and lack of authentication. Reply at 3. To the extent that the Court does not rely upon the aforementioned evidence, the Court OVERRULES JMH's objections as moot.[1]

As to the portions of Ms. O'Brien's declaration that the Court considers, the Court finds those portions to be appropriately based on her own experiences and observations. For example, Ms. O'Brien testifies "based on [her] observations" and "[b]ased upon [her] 28-year employment at JMH and [her] experience as a supervisor." *See* Dkt. No. 86-1 ("O'Brien Decl.") ¶¶ 12, 15. Accordingly, the Court OVERRULES JMH's objections for lack of foundation and lack of personal knowledge.

Furthermore, Ms. O'Brien does not speculate but offers testimony regarding her own reactions to and interpretations of others' actions. For example, she testifies about what she saw, how actions "appeared to [her]," and what "[she] genuinely believed." *See id.* ¶¶ 9-10, 12. The Court OVERRULES JMH's objections on the basis of speculation.

The Court also holds that the O'Brien declaration meets the low bar for relevancy under Federal Rule of Evidence 401 and OVERRULES JMH's relevance objection.

### ii. Bell Deposition

JMH also objects to excerpts from the Bell deposition on grounds of lack of foundation,

---

[1] The Court does not need to rely upon the portions of Ms. O'Brien's declaration and exhibits that JMH argues are inadmissible on the basis of hearsay or lack of authentication. Accordingly, the Court will not address those objections, but notes that most if not all of the statements objected to on hearsay grounds either appear to be party admissions or plainly are not offered for the truth of the matter asserted, or both.

3

1    lack of personal knowledge, speculation, and hearsay. Reply at 3. Again, to the extent that the
2    Court does not rely upon the portions of the Bell deposition to which JMH objects, the Court
3    OVERRULES JMH's objections as moot.

4        The Court holds that Mr. Bell testified from his personal observations and experience.
5    Furthermore, in the relevant portions of his deposition, Mr. Bell limits his testimony to his
6    personal thoughts and reactions. As such, the Court OVERRULES JMH's objections for
7    speculation, lack of foundation, and lack of personal knowledge.

8        The Court also finds JMH's hearsay objections meritless because "an out-of-court
9    declarant could present the evidence through direct, admissible testimony at trial." *See Chartis*
10   *Specialty Ins. Co.*, 2013 WL 4647288, at *3 (citing *Fraser*, 342 F.3d at 1036). Accordingly, the
11   Court OVERRULES JMH's hearsay objections.

        **iii.    Evidence from the Reed Action**

13       JMH objects to the portions of Plaintiffs' opposition brief and the evidence cited therein
14   that reference Michelle Lopes's and Charles Griffin's alleged sexual relationship on the grounds
15   of lack of foundation, lack of personal knowledge, speculation, irrelevance, and hearsay. Reply at
16   3-4.

17       As an initial matter, the Court finds that evidence that Ms. Lopes and Mr. Griffin engaged
18   in a sexual relationship is relevant to Ms. Lopes's potential motivation for her alleged actions.
19   Thus, the Court OVERRULES JMH's relevance objections.

20       JMH's remaining evidentiary objections are not sufficiently specific to enable the Court to
21   properly consider them. JMH objects to entire pages, "so it is not possible for the Court to fairly
22   evaluate the objections." *Schaeffer v. Gregory Vill. Partners*, 2015 WL 2267813, at *5 (N.D. Cal.
23   May 14, 2015). The Court therefore OVERRULES JMH's vaguely asserted objections to
24   evidence from the Reed Action without prejudice to the assertion of proper objections, made to
25   specific statements, at the time of trial or in connection with a future motion.

### iv. Robbins Declaration

Finally, JMH objects to the entire Robbins declaration as irrelevant. Reply at 4. The Court does not rely on the Robbins declaration, and thus OVERRULES the objection as moot.

### v. Evidence Submitted with JMH's Reply Papers

On June 15, 2016, Plaintiffs filed objections to evidence allegedly submitted for the first time with JMH's Reply. Dkt. No. 90.

JMH submitted its Reply on June 2, 2016, and thus under Civil Local Rule 7-3(d)(1), Plaintiffs' objections to JMH's Reply evidence were due by June 9, 2016. Plaintiffs' objections were filed 6 days after the deadline, and the Court OVERRULES the objections on that basis.

## B. Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings and evidence demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist.*, No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

The court must review the record as a whole and draw all reasonable inferences in favor of

1    the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).
2    However, unsupported conjecture or conclusory statements are insufficient to defeat summary
3    judgment. *Id.* Moreover, the court is not required "to scour the record in search of a genuine issue
4    of triable fact," *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), but rather
5    may limit its review to the documents submitted for purposes of summary judgment and those
6    parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*,
7    237 F.3d 1026, 1030 (9th Cir. 2001).

8    In an employment discrimination case, a plaintiff "need produce very little evidence in
9    order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis,
10   Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000); *see also Nigro v. Sears, Roebuck & Co.*, 784
11   F.3d 495, 499 (9th Cir. 2015) (reversing grant of summary judgment for defendant in employment
12   discrimination case and noting that "it should not take much for [a] plaintiff in a discrimination
13   case to overcome a summary judgment motion."). "This is because the ultimate question is one
14   that can only be resolved through a searching inquiry—one that is most appropriately conducted
15   by a factfinder, upon a full record." *Chuang,* 225 F.3d at 1124 (internal quotation marks omitted).
16   The Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a
17   full trial, since discrimination claims are frequently difficult to prove without a full airing of the
18   evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv.
19   Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

20   **C.    Constructive Discharge**

21   Plaintiffs assert constructive discharge claims against Defendants under Title VII, FEHA,
22   and common law.

23   A "constructive discharge in violation of fundamental public policy gives rise to a tort
24   action in favor of the terminated employee." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238,
25   1252 (1994). "Constructive discharge occurs when the employer's conduct effectively forces an
26   employee to resign." *Id.* at 1244; *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.
27   1987). In order to prevail on a claim for constructive discharge, a plaintiff must show "that the
28   employer either intentionally created or knowingly permitted working conditions that were so

intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner*, 7 Cal. 4th at 1251.

Constructive discharge requires "adverse working conditions [that are] unusually 'aggravated' or amount to a 'continuous pattern.'" *Id.* at 1247. While a "single isolated instance" of employment discrimination is insufficient to establish constructive termination, "incidents of differential treatment over a period of months or years" can be enough. *Watson*, 823 F.2d at 361. An "employer must either deliberately create the intolerable working conditions that trigger the resignation or, at a minimum, must know about them and fail to remedy the situation in order to force the employee to resign." *Turner*, 7 Cal. 4th at 1249-50. "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." *Watson*, 823 F.2d at 361.

### i. Perez

JMH moves for summary judgment as to Perez's constructive termination claim on the basis that grievances related to schedule and work assignments do not amount to intolerable working conditions as a matter of law. Mot. at 11. Further, according to JMH, other nurses were scheduled to work more demanding schedules than Perez, Perez's special scheduling requests were always accommodated, and Perez never suffered any loss in pay or benefits. *Id.* at 11-13. The Court disagrees that summary judgment is proper on this claim.

JMH oversimplifies — or ignores —Perez's evidence suggesting that her scheduling assignments, particularly the four-hour floats, were intolerably stressful and risked her livelihood. Perez testified that she was "scared . . . to lose [her] license every day" because of her daily four-hour float assignments, "increased workloads," assignments to the postpartum unit despite her lack of a neonatal resuscitation license, and unexplained removal from the transport unit. Dkt. No. 87-10 ("Perez Dep.") at 19:25-23:1. Indeed, Ms. Lopes, one of Perez's supervisors, testified that four-hour floats increase incomplete documentation; incorrectly administered medications; incomplete hand-off reports; and nurses' feelings of being rushed, fatigued, and stressed. Dkt. No. 86-24 ("Lopes Dep.") at 36:17-40:11. If Perez's evidence is credited, a rational trier of fact could

conclude that the cumulative stresses of her work assignments would result in objectively intolerable work conditions.

Perez also presents evidence that she was singled out for additional four-hour float shifts. Shanda Dellner, Perez's Float Pool Supervisor, changed Perez's schedule "often." Dkt. No. 86-20 ("Bell Dep.") at 60:6-14. These changes included increased float assignments even when it did not make sense to assign Perez to float because she was going to another floor and "other nurses could have floated" instead. *Id.* at 64:15-65:6. Moreover, while other nurses were relieved of four-hour float assignments after voicing complaints, Perez's complaints went unheeded, and she continued to be assigned four-hour floats out of rotation. *Id.* at 99:8-101:10, 101:25-105:13. If it is true, as JMH represents, that other nurses who have not resigned were assigned more four-hour floats than Perez, Dkt. No. 70-6, Ex. F, her claim would no doubt be weakened. But at this stage the Court is required to make all reasonable inferences in the plaintiff's favor, and cannot now conclude as a matter of law that Perez's assignments were not "so intolerable and discriminatory as to justify a reasonable employee's decision to resign."

Though Perez's evidence is far from overwhelming, it is the province of the jury to decide what a reasonable person would do under these circumstances. Applying the well-settled standard for summary judgment, the Court finds that Perez has presented sufficient evidence to raise triable issues of material fact regarding whether her working conditions were so intolerable that a reasonable employee in her position would resign. Accordingly, the Court DENIES JMH's motion for summary judgment on Perez's constructive termination claim.

### ii. Cerisano

JMH moves for summary judgment on Cerisano's constructive termination claim on the grounds that it did not subject her to intolerable working conditions as a matter of law because Cerisano received annual wage increases, never suffered a demotion, and received positive remarks from her supervisors in her performance reviews. Mot. at 15. JMH further asserts that all disciplinary actions issued to Cerisano were due to legitimate violations of JMH's Standards of Professional Relations. *Id.* at 15-16. Again, the Court disagrees that JMH is entitled to summary judgment on this claim.

Cerisano presents evidence that her JMH supervisors treated her in an intolerably hostile manner with the ultimate goal of terminating her employment. For example, Julie O'Brien, a clinical coordinator in Cerisano's "4-West" group, states in her declaration that JMH supervisors Pam Volberding and Andrea Lovejoy treated Cerisano in an "unfair and hostile" manner. Dkt. No. 86-1 ("O'Brien Decl.") ¶¶ 9-10, 12. Ms. O'Brien felt "coerced" by Ms. Volberding to discipline Cerisano for conduct that Ms. O'Brien felt "was trivial and was not a legitimate basis for discipline." *Id.* ¶ 15. Furthermore, Ms. O'Brien observed that other JMH staff members were not disciplined for similar issues, and perceived that the JMH supervisors were "instituting steps to get rid of [Cerisano]." *Id.* ¶¶ 9, 12. Even when Cerisano requested time off in advance of important events such as her wedding, Ms. Lovejoy denied her requests in contravention of JMH policy. Bell Dep. at 43:14-17, 44:1-9, 45:18-46:8; Cerisano Decl. ¶ 12. While each of the aforementioned incidents would be insufficient to constitute constructive termination in isolation, a rational factfinder could conclude that "incidents of differential treatment over a period of months or years" resulted in constructive termination. *See Watson*, 823 F.2d at 361.

A jury may or may not find Cerisano's evidence persuasive, but given the vigorously disputed factual record, and making all reasonable inferences in Cerisano's favor, the Court cannot conclude as a matter of law that JMH did not constructively terminate her. The Court DENIES JMH's motion for summary judgment on Cerisano's constructive termination claim.

### D. Retaliation

Next, Plaintiffs assert retaliation claims against Defendants under Title VII and FEHA.

To establish a prima facie case of retaliation, an employee must show that (1) she "engaged in a protected activity"; (2) she "was subsequently subjected to an adverse employment action"; and (3) "a causal link exists between the two."[2] *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). Retaliation claims "must be

---

[2] The analysis for a retaliation claim is substantively similar under Title VII and FEHA with the following exception: under Title VII, an adverse employment action "is not limited to discriminatory actions that affect the terms and conditions of employment," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006), whereas under FEHA, the adverse action "must materially affect the terms, conditions, or privileges of employment," *Yanowitz*, 36 Cal. 4th at 1052. This distinction does not affect the Court's analysis in this Order.

proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). If a plaintiff is able to establish a prima facie case, the burden shifts to the defendant to show a "legitimate, non-discriminatory" reason for subjecting the plaintiff to the adverse employment action. *Id.* If the defendant meets that burden, the plaintiff must raise a genuine issue of material fact as to whether the defendant's legitimate, non-discriminatory reason is pretextual. *Id.*

A plaintiff asserting a discrimination claim can "demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011). Direct evidence—that is, "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption"—creates "a triable issue as to the actual motivation of the employer . . . even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221 (internal quotation marks omitted). If direct evidence is not available, "the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Id.* at 1222. Although the Ninth Circuit has stated that "the circumstantial evidence relied on by the plaintiff must be 'specific' and 'substantial,'" *France*, 795 F.3d at 1175, that standard "is tempered by our observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *Earl*, 658 F.3d at 1113 (internal quotation marks omitted).

      **i.**    **Perez**

JMH does not dispute that Perez's participation in the Reed Action constitutes "protected activity" for purposes of her retaliation claim. However, JMH urges the Court to grant summary judgment on Perez's retaliation claim because (1) there was no significant change in Perez's workload following her deposition testimony and (2) Perez cannot establish a causal connection between her Reed Action testimony and Ms. Dellner's actions. Mot. at 17-20. The Court disagrees with both arguments.

### a. JMH Has Not Shown that Perez Cannot Establish a Prima Facie Case for Discrimination

As noted above, Perez has produced sufficient evidence to raise a triable issue of fact as to whether she was subject to an adverse employment action. For example, Perez has offered evidence that four-hour floats increase errors and cause nurses to feel rushed, fatigued, and stressed. *See* Lopes Dep. at 36:17-40:11. There is also evidence that Ms. Dellner "often" increased Perez's float assignments without apparent reason. *See* Bell Dep. at 60:6-14, 64:15-65:6, 99:8-101:10, 101:25-105:13.

JMH contends that Perez's schedule "does not show any appreciable change in Perez's workload after she gave her deposition testimony in March 2013." Mot. at 18. In support of its argument, JMH generally cites to over fifty pages of schedules for every nurse at JMH during the relevant time period. *See id.* (citing Dkt. No. 70-6, Ex. F). The Court is not responsible for wading through JMH's exhibit to piece together its argument: it is JMH's burden to inform the Court of the basis of its Motion, and the Court cannot discern whether JMH accurately represents the nature of Perez's schedule given its general citation to a lengthy, inscrutable document. *See Celotex*, 477 U.S. at 323; *Vincent v. Countrywide*, No. C13-01569 HRL, 2013 WL 5690153, at *3 n. 4 (N.D. Cal. Oct. 16, 2013). Accordingly, the Court finds a triable issue of fact as to whether Perez suffered an adverse employment action. *See Yanowitz*, 36 Cal. 4th at 1052 ("Although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.").

Perez has also made a sufficient prima facie showing of a causal link between her participation in the Reed Action and Ms. Dellner's actions. Ms. Dellner provided a declaration in the Reed Action and thus was aware of the Reed Action allegations. *See* Dkt. No. 86-5. Additionally, Perez has submitted evidence tending to show that Ms. Dellner possessed knowledge of her participation in the Reed Action given that Ms. Dellner coordinated Perez's meeting with Mr. Lester, JMH's attorney in the Reed Action. Dkt. No. 86-31 ("Dellner Dep.") at Exs. 75, 76. Thereafter, according to Perez and Mr. Bell, Ms. Dellner began assigning Perez to

high risk four-hour floats out of rotation in spite of her objections. Perez Decl. ¶¶ 6-11; Bell Dep. at 60:6-14, 64:15-65:6, 99:8-101:10, 101:25-105:13.

JMH vigorously asserts that Perez's failure to establish that Ms. Dellner was aware of the *nature* or *contents* of Perez's testimony in the Reed Action precludes a prima facie showing of causation. *See* Mot. at 19. Yet Ninth Circuit law only requires that "the employer was aware that the plaintiff had engaged in the protected activity," *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982), and JMH presents no authority imposing the additional requirement that the employer know the *substance* of such activity. *See* Mot. at 17 (collecting cases). As such, the Court finds that Perez has proffered sufficient evidence to meet the low burden of establishing a prima facie case of retaliation. The persuasiveness of the evidence on this score is a question for the jury at trial.

### b. JMH Has Articulated a Legitimate, Non-Discriminatory Reason for Its Actions

JMH maintains that Perez did not receive additional workload after her participation in the Reed Action and that any appreciable changes were due to normal hospital operations such as the elimination of transport leads in the Medical Imaging Unit. Mot. at 4, 17-20.

### c. Perez Has Raise a Triable Issue as to Pretext

Even if JMH's evidence is sufficient to demonstrate a legitimate, non-discriminatory reason for its conduct, Perez has presented sufficient evidence of pretext or discriminatory motive to create a triable issue of fact. Mr. Bell testified that Ms. Dellner targeted Perez for additional four-hour floats "often," even when it did not make sense because others could have floated. Bell Dep. at 60:6-14; 64:15-65:6. Indeed, other nurses were relieved of four-hour floats after complaining, but Perez's pleas went unheeded. *Id.* at 99:8-101:10, 101:25-105:13. Making all reasonable inferences in Perez's favor, this testimony suffices to satisfy Perez's "hardly onerous" burden of raising a triable issue as to whether JMH's explanations for Perez's schedule are valid.[3]

---

[3] The Court notes that it appears undisputed that at least one other JMH employee, Matthew Buechter, provided testimony unfavorable to JMH in the Reed Action without experiencing any subsequent adverse employment actions. *See* Dkt. No. 70-11. Without prejudging any issue, this evidence potentially poses a significant challenge to both Plaintiffs' ability to convince a trial jury

*See Godwin*, 150 F.3d at 1221-222 (internal quotation marks omitted); *see also Earl*, 658 F.3d at 1113 (internal quotation marks omitted).

Accordingly, the Court DENIES JMH's motion for summary judgment as to Perez's retaliation claim.

### ii. Cerisano

Here, too, JMH does not dispute that Cerisano engaged in protected activity but asserts that Cerisano (1) did not suffer an adverse employment action because "she resigned her employment directly from her medical leave" and (2) cannot "prove that her protected activities motivated JMH's conduct." Mot. at 20-21. Further, JMH contends that Cerisano possesses no admissible evidence that JMH's legitimate, non-discriminatory justifications for its actions are pretextual. *Id.* at 22-23. The Court disagrees with JMH.

#### a. JMH Has Not Shown that Cerisano Cannot Establish a Prima Facie Case For Discrimination

Cerisano has produced enough evidence to establish a material dispute as to whether she suffered an adverse employment action. Ms. O'Brien observed that JMH supervisors, Ms. Volberding and Ms. Lovejoy, exhibited "unfair and hostile" behavior towards Cerisano. O'Brien Decl. ¶¶ 9-10, 12. Ms. O'Brien felt pressured by her supervisor Ms. Volberding to discipline Cerisano for matters that she felt were trivial and illegitimate. *Id.* ¶ 15. Ultimately, Ms. O'Brien perceived that Ms. Volberding, Ms. Lovejoy, and Ms. Sara Monahan were "treating [Cerisano] with hostility as compared to other nurses, and instituting steps to get rid of her." *Id.* ¶ 12. Finally, three weeks after the Reed Action settled, Cerisano was placed on a 45-day probationary period known as a Performance Improvement Plan ("PIP"). Cerisano Decl. ¶¶ 8-10. This evidence raises a triable issue of fact as to whether Cerisano was subject to an adverse employment action.

JMH asserts that Cerisano cannot establish the requisite causal link between her protected activities and JMH's conduct because Ms. Lovejoy, Ms. Volberding, and Ms. Monahan all had

---

of causation and pretext.

little substantive knowledge regarding the Reed Action and the nature of Cerisano's involvement. Mot. At 21. However, Cerisano need only establish that "*any* of the persons involved in bringing about the adverse action held the requisite animus, provided that such person's animus operated as a 'but-for' cause" of her adverse employment action. *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 108 (Ct. App. 2004). Cerisano has proffered sufficient evidence to create a triable issue as to the "but for" cause of her adverse employment action.

Cerisano has presented evidence that both Ms. Lopes and Ms. Dellner were aware of her participation in the Reed Action. Dkt. No. 86-24 at 102:6-103:8; Cerisano Decl. ¶ 3; Dkt. No. 86-14 ¶ 17; Dellner Dep. at 145:19-146:24; Dellner Decl. ¶ 8. In May 2012, Ms. Dellner sent an email to Ms. Volberding and Ms. Lopes complaining about Cerisano's professionalism, which spurred a meeting between Cerisano and her 4-West management team, including Ms. Lovejoy and Ms. Volberding. Dellner Dep., Ex. S. Thereafter, Ms. Lovejoy and Ms. Volberding were observed treating Cerisano in a noticeably hostile manner. *See* O'Brien Decl. This evidence raises a triable factual dispute as to whether Ms. Lopes's and Ms. Dellner's animus towards Cerisano infected her reputation in the 4-West unit and constituted a but-for cause of her subsequent adverse employment action.

Accordingly, Cerisano has produced sufficient evidence to establish a prima facie case of retaliation. Again, whether this evidence will suffice to meet the substantially higher burden imposed at trial is a question for the jury.

### b. JMH Has Articulated a Legitimate, Non-Discriminatory Reason for Its Actions

JMH has proffered evidence that Cerisano has a history of issues with communication and professionalism, which could explain the heightened scrutiny and increased disciplinary action that she experienced. *See, e.g.*, Lopes Decl. ¶ 5; Dellner Decl., Ex. S.

### c. Cerisano's Evidence Establishes Triable Issues of Fact Regarding Pretext

Cerisano has presented sufficient evidence of pretext or discriminatory motive to create a triable issue of fact. For example, Ms. O'Brien testified that Cerisano was singled out for disciplinary actions and perceived that other JMH supervisors were "instituting steps to get rid of

14

[Cerisano]." O'Brien Decl. ¶¶ 9-10, 12.

Furthermore, there is circumstantial evidence that Cerisano's PIP was retaliatory. A January 3, 2012, email from Ms. Lopes provides evidence that Ms. Lopes briefed Ms. Monahan on the nature of the Reed Action on or around that date, Dkt. No. 86-24, Ex. 87, and Ms. Monahan was aware of Cerisano's Reed Action participation, Monahan Decl. ¶ 3. Thereafter, Ms. Monahan approved Cerisano's PIP, which was issued in the wake of the Reed Action settlement. Dkt. No. 86-19, Ex. 129. Given the timing of Cerisano's PIP, and making all factual inferences in favor of Cerisano regarding Ms. Monahan's knowledge of the Reed Action, a rational trier of fact could conclude that Ms. Monahan delayed the issuance of Cerisano's retaliatory PIP until she could no longer harm JMH in the Reed Action.

Although Cerisano's evidence is highly circumstantial, and again far from conclusive, viewing the evidence in the light most favorable to Cerisano, the Court finds that the cumulative evidence creates a triable issue of fact as to whether JMH's legitimate, non-discriminatory reasons for its adverse employment actions are pretext. Therefore, the Court DENIES JMH's motion for summary judgment on Cerisano's retaliation claim.

### E. Failure to Provide a Workplace Free from Discrimination and Retaliation

Plaintiffs bring their failure to provide a workplace free from discrimination and retaliation claim against Defendants under California law. At the June 16, 2016, Motion hearing, the parties agreed that Plaintiffs' claim for failure to provide a workplace free from discrimination and retaliation rises or falls with Plaintiffs' claims for constructive discharge and retaliation.

Because the Court has held that Plaintiffs have raised a triable issue of fact as to their constructive discharge and retaliation claims, the Court DENIES JMH's motion for summary judgment as to Plaintiffs' claim for failure to provide a workplace free from discrimination and retaliation.

### F. Disability Discrimination

Lastly, Cerisano asserts disability discrimination claims in violation of the ADA and FEHA.

JMH moves for summary judgment on Cerisano's disability discrimination claims,

15

asserting that she has failed to establish a prima facie case of disparate treatment. Mot. at 23-24. However, in the opposition, Cerisano responds that her disability discrimination claims are premised upon a failure to accommodate and that she "does not allege" a claim for disparate treatment. Dkt. No. 86 at 25. JMH addresses the failure to accommodate theory for the first time in its Reply. *See* Dkt. No. 89.

Because it is not appropriate for this Court to address arguments raised for the first time in a party's reply, the Court DENIES JMH's motion for summary judgment as to Cerisano's failure to accommodate claims.[4] *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010).

### III. CONCLUSION

A plaintiff "need produce very little evidence in order to overcome an employer's motion for summary judgment," *Chuang*, 225 F.3d at 1124, and the ultimate determination of Plaintiffs' claims is the province of a jury. In line with the Ninth Circuit's clearly-stated standards, the Court DENIES JMH's motion for summary judgment. All pretrial and trial dates remain in effect.

**IT IS SO ORDERED.**

Dated: June 23, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] The Court notes that the FAC is vague as to whether Cerisano asserts a disability discrimination claim premised upon disparate treatment. *See Id.* ¶¶ 87, 109. However, based on Plaintiffs' arguments in the opposition and at the June 16, 2016 hearing, the Court will hold Cerisano to her representation that her disability discrimination claims are based solely on a failure to accommodate theory.

16